Spear, J.
The question involved in the case is whether wholesale dealers in intoxicating liquors are subject to the tax imposed “ upon the business of trafficking in spirituous, vinous, malt, or any intoxicating liquors,” by the act of the general assembly passed May 14, 1886, entitled “An act providing against the evils resulting from the traffic in intoxicating liquors ” ? Section 8 of the act, the section more particulaidy involved in this inquiry, reads as follows : “ The phrase ‘ trafficking in intoxicating liquors/ as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescriptions issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical, or sacramental purposes, but such phrase does not include the manufacturing of intoxicating liquor from the raw material, and the sale thereof by the manufacturer of the same in quantities of one gallon or more at any one time.”
Counsel for plaintiffs insist that this question must be answered in the negative, and urge in support of this claim:
1. That wholesale dealers can not be included, because the phrase, “traffic in intoxicating liquors,” as used in sec *671 tion 18 of the schedule to the constitution, does not embrace such dealers, but applies only to the retail traffic; and if 'the terms of the law compel a construction including wholesale dealers, then, as to them, it is unconstitutional, being repugnant to the section of the schedule referred to, which reads as follows: “ No license to traffic in intoxicating liquors shall hereafter be granted in this state; but the general assembly may, by law, provide against evils resulting therefrom.”
2. The provisions of the law, so far as they may be held to apply to wholesale dealers, are in violation of section 2 of article 12 of the constitution, because the object of the act in imposing burdens upon them is revenue only, and the burdens are not uniformly imposed in that there is an unjust discrimination against the wholesale dealer and in favor of the holder of other classes of property and against the former, and in favor of the manufacturer.
8. The law is of a general nature, and, as to wholesale dealers, is not of uniform operation throughout the state, and is, therefore, repugnant to section 26 of article 2 of the constitution.
4. If wholesale dealers are held to be within the provisions of the law, the dealers of this state will be put to great disadvantage in competition with dealers from without who sell by sample, and the effect must necessarily be to drive home dealers beyond the limits of the state.
The legal propositions are all disputed by counsel for defendant, who contend that the act applies to wholesale dealers, and is a constitutional and valid law. These contrary views are enforced and illustrated by very able and ingenious arguments on the part of the respective counsel, which will be found epitomized in the pi-eceding pages, and need not be repeated.
We do not feel called'upon to enter at large into a discussion of the law. Save as to a feature not involved in the controversy here, it is the same in its provisions as the act of April 17, 1888, popularly known as the Scott law. That enactment was subjected to a critical examination by *672 this court in the case of The State v. Frame, 39 Ohio St. 199. The present law was very fully examined in the cases of Adler v. Whitbeck and of Anderson v. Brewster, disposed of and reported at the last term, ante, pp. 539, 576. The conclusions reached by'the court in those cases, so far as they affect questions involved here, are satisfactory, and, where applicable to this case, control it. We have no disposition to unnecessarily swell the already plethoric volume of literature upon the general subject embraced in the diseussions'in the various cases arising under the liquor taxing laws, and will endeavor to dispose of the case at bar as briefly as may be.
It is contended that section 8 of the statute should be construed to read as follows: “But such phrase does not include the manufacturing of intoxicating liquors from the raw material, or the sale thereof in quantities of one gallon or more at any one time.” The language of the section appears to be plain, and to admit of but one meaning. It seems to explain and construe itself, and, when this is the case, the task of the interpreter can hardly be said to arise; nor, as we think, does anything in the context have the effect to render its meaning questionable. To adopt the foregoing would be to strike out and insert, a process common in legislative bodies, but unusual in courts of justice. It is our duty to give effect to what the law-makers have put in the law, and to all of it, not to repeal and substitute. In terms the section says that selling at wholesale by the manufacturer is not the form of traffic included in the law, and specifies no other form of wholesaling as not included. It follows, therefore, necessarily, as we think, that selling at wholesale by others than the manufacturers is included within the terms of the law.
The proposition that the phrase “traffic in intoxicating liquors,” used in section 18 of the-schedule, applies only to the retail traffic, we are of opinion is not sound. The language of the section is clear and unambiguous, nor is there any other clause or section of the constitution which serves in the least to throw doubt upon the meaning of the words *673 used. Words so employed maybe taken in their plain, ordinary sen.se, unless a different meaning is required in order to give effect to some other portion of the instrument, or unless they are varied by the language of some other portion, or the consequences following such construction would be plainly contrary to the legislative intent. No different construction is required in order to adapt the language used to the particular subject-matter, for there can be no question but that the mischiefs sought to be remedied were those arising from the improper use of intoxicating liquors, and the means intended to be legalized were legislative enactments providing against the sale or furnishing of liquor in any form that would be productive of evil. The word “traffic” has always had a well understood meaning in the popular sense. It is the passing ‘of goods or commodities from one person to another for an equivalent in goods or money; and a trafficker is one who traffics — a trader, a merchant. No limit as to amount is fixed in the section, and it is plainly as much traffic to deal in a given commodity by the wholesale as at retail. The two forms of traffic were in existence at the time of the framing and adoption of the constitution as they now are, and it would be strange indeed if the very intelligent body of gentlemen who drafted that instrument used language naturally including both forms if it was meant to include only one. The phrase referred to had not obtained a technical meaning; hence, it is proper to attach the popular meaning, especially as neither the context nor a consideration of the consequences which would result from a literal interpretation, furnish any ground for departure from such construction. The business of the interpreter is not to improve the language in question;.it is to expound it. The question for him is not so much what the law-makers meant, but what their language means. And yet, if wo were at liberty to regard the history and external circumstances which led to the adoption of the section in question, and by putting ourselves in the position of those whose *674 words we are. to interpret, seek in that way to ascertain what those words relate to, the same result would follow, for the general scope of the subject is clearly indicated by the petitions presented and the comments of the members thereon.
Those petitions varied in form. Some prayed the adoption of a clause preventing the legislature “ from passing any act authorizing the retail of intoxicating liquors; ” others, a clause forbidding the legislature passing any law “whereby the sale of spirituous liquors may be granted to any one, or the traffic therein in any manner legalized ; ” others, a provision “prohibiting the sale of ardent spirits ; ” others, a clause “ prohibiting traffid in intoxicating liquors; ” and others that “ an excise be laid on every gallon of liquor manufactured sufficient to prevent the distillation.” These several phases of the question were matters of discussion, and there was no manifest haste or want of consideration in the formulating of the language of this section. On the contrary, the debates of the convention show that the section was the subject of much criticism; and while it is true that the evils which its advocates urged as most demanding correction were those of the retail traffic (the only form theretofore .sought to be regulated by license),-and while it is possible that some may not have realized the fullest effect of the language employed, yet the debates show beyond question that the meaning and possible effects of the proposed section were discussed, not only as affecting the retail trade, but the manufacture and all commercial dealings in liquors.
The adoption of the section was urged by some members with the avowed purpose of enabling the general assembly to provide against evils arising from any and all forms of the traffic. One member, responding to another who had advocated the adoption of the section, used this language : “ The gentleman supposes that if we insert this provision into the constitution, taking away from the general assembly the power of authorizing by license the traffic in spirituous liquors, that such a provision, together with the *675 existing laws upon the subject, would have the effect to prevent the manufacture of and all commercial dealings in those articles. I understand that to be the substance of the gentleman’s legal opinion.” To this the other assented. Another member used language of this import: “I am opposed to the traffic in ardent spirits. I desire to cut it up by the roots, and drive it out,of the state.” Another, commenting upon the diverse views of those who. had spoken upon.the subject, and the possibility of the language used not conveying to the people and' the general assembly the meaning intended by the framers, expressed himself in this way : “ But the gentlemen should remember that our individual designs and intentions can not affect the proper and legitimate meaning of the words which we employ in this article.”
The addition of a single word would have confined the effect of the section to the retail traffic. The convention chose not to insert such word, but submitted the section as we have it, and as it was adopted by the people. They used general language, and whatever naturally falls within its ordinary meaning must, in view not only of the obvious import of the words used, but of the circumstances which led to its adoption, be held to have been intended.
To the point that the language itself is controlling, may be cited the following from the opinion of Gholson, J., in Goshorn v. Purcell, 11 Ohio St. 649: “Particular cases or instances lead to the adoption of general rules or principles-Many- of the general rules of law are thus deduced from the decision of particular cases. . . . But when particular instances lead to the adoption of a general rule, in the shape of a legislative or constitutional provision, the authority for the rule has no such limit. The rule is to be interpreted by the language employed in its enunciation, and that language, when clear and comprehensive, is not to be limited in view of the particular instances which may be supposed to have led to the adoption of the rule.”
There is, too, much significance in the point made by defendant’s counsel in their brief that the mode of submission *676 throws light upon the understanding of the people as well as of the convention as to the meaning of the section. In voting, those who favored it voted a ballot having on it: “ License to sell intoxicating liquors, no;” while those who were opposed voted a ticket having on it: “ License to sell intoxicating liquors, yes.” The people who voted the former ticket cau not have supposed that when they voted “ no-” on the proposition to license the sale of intoxicating liquors, they were voting “ yes ” as to the wholesale trade, or leaving the question of license or no license as to that form of traffic an open one for legislative discretion. Yet this result would follow if the construction claimed by plaintiffs is the true one. It is clear that the word “ therefrom ” in the second clause refers to the phrase “ traffic in intoxicating liquors” in the first clause, and if the word “ therefrom” is confined to the retail traffic then it follows that the same construction must be given its equivalent in the first clause.
But even if it should be admitted that the evils contemplated by section eighteen are those of the retail traffic alone, still it would not follow that the act, in the particular complained of, is unconstitutional, for power to legislate generally upon the subject is conferred by section one of article 2 of the constitution. That section provides that “ the legislative power of this state shall be vested in a general assembly.” This essential power may be exercised upon all subjects to which it is applicable to such extent as the government may see fit to carry it, and unless restrained by other sections it is clearly within legislative competency to select this object of 'taxation, and place upon it such burdens as in the discretion of the law-making power may be wise and expedient. It does not now admit of controversy in Ohio that the power to levy taxes is a part of this legislative authority, and that, except so far as restrained by other provisions, the power is unlimited, and may be exercised for the accomplishment of lawful objects in regard to any property or business within the state.
*677 The second proposition of plaintiff’s counsel implies that section 2 of article 12 of the ^constitution affords a limitation upon that power, and that the provisions of the law in question, as to wholesale dealers, are in violation of that section, because, while the section requires that laws shall be passed taxing property by a uniform rule, this law, so far as wholesale dealers are concerned,-is for revenue only, and unjustly discriminates between the wholesale dealer and the manufacturer, and betweeu the wholesale dealer as to his property and the holder of other kinds of property, inasmuch as the former is required to pay a tax under this law and general taxes under the general tax law in addition. To this it may be answered that the law does not purport to be for revenue, but to provide against evils, and, to construe it as a revenue law it must be shown that there are no evils incident to the wholesale traffic, and, in contemplation of law, that none can arise, a proposition which, we think, can not be maintained.
The first liquor law enacted under the present constitution made it an offense to sell intoxicating liquor to a person intoxicated, to one in the habit of becoming intoxicated, or to a minor, and these provisions have been in force ever since. True, the evils here sought to be guarded against sprang chiefly from sales in small quantities. But will any one say that evils are likely to arise from the sale to such a person of a drink of liquor, and none likely to follow the sale to the same person of a gallon ? "We assume not. And of all evils, and how they may be provided against, the general assembly is, by the constitution, made the judge. The whole field of choice is left to that body, and so long as it keeps within constitutional limits, no supervising power exists in the courts to say that the choice has not been wisely made. This law, as to its taxing features, operates upon a business and not upon property within the meaning of the section referred to, and hence is not required to be uniform in its application to all forms of the traffic or to all classes. We need not enlarge upon this. The opinions and holdings of this court in Adler v. Whitbeck, supra, and Anderson v. *678 Brewster, supra, treat at length of the question and dispose of the proposition.
Nor is the proposition tenable that the law being of a general nature is not of uniform operation throughout the state, and for that reason repugnant to section 26 of article 2 of the constitution. True, the law is of a general nature and does discriminate between the general dealer and the manufacturer. It requires one to pay, and the other, where the sales are of one gallon and over, is exempted. This implies a division of the two into separate classes, but does not show that because of that fact the law is not of uniform operation. The principle of uniform operation requires simply that the law shall bear equally in its burdens Upon persons standing in the same category. A law is uniform in its operation where every person who is brought within the relation and circumstances provided for is alike affected by the law. It must have a uniform operation upon all those included within the class upon which it purports to operate. It is not claimed that the law does not purport to operate equally upon all wholesalers who are not manufacturers. As between the wholesale dealer and the manufacturer there is manifestly a real, taugible difference, though they have characteristics in common. The general assembly has chosen to classify and to discriminate accordingly. If the classification is proper the discrimination can not be objected to. Ve are not prepared to say that the classification is not warranted. The question in its general aspects is fully discussed and disposed of satisfactorily in the opinion in Adler v. Whitbeck, supra, and, we think, the argument of defendant’s counsel in this case will be found to amply meet the special phase of the question presented by the record.
Respecting the claim that if the law is held to apply to wholesale dealers they will be put to great disadvantage and driven from the state, it is enough to say that the consideration relates to the wisdom of the law, and not, in any sense, to its validity, and is addressed wholly to the general assembly. The court has no concern with it.

Motion overruled.

Owen, O. J., dissents.